# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE ROGERS,<br>**Plaintiff** : | CIVIL ACTION<br>NO. 10-1497 |
| v. : | |
| CONAIR CORP.,<br>**Defendant** : | |

## MEMORANDUM OPINION

Rufe, J.                                                                                                April 24, 2012

On April 5, 2010, Plaintiff filed a *qui tam* relator suit pursuant to 35 U.S.C. § 292, alleging that Defendant falsely marked and marketed various of their Scunci brand "Non-Slip Grip" hair clips as "patented" or "patent pending," knowing that the relevant patent applications had been abandoned. Defendant has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), in light of the enactment of the Leahy-Smith America Invents Act (the "Amendment"),[1] which eliminates *qui tam* actions under § 292 for "all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this act."[2] Plaintiff responds that the Amendment's retroactive elimination of *qui tam* actions is unconstitutional and, in any event, his pleadings are sufficient to state a claim under the Amendment as he has adequately alleged a competitive injury.[3] The Government has intervened

---

[1] The Amendment, which amends 35 U.S.C. § 292, was signed into law on September 16, 2011.

[2] Pub. Law 112-29, § 16(b)(4).

[3] 35 U.S.C. § 292(b) provides that a person who suffers a "competitive injury" as a result of a violation of the Amendment has standing to sue for compensatory damages.

1

to defend the constitutionality of the Amendment. For the reasons set forth below, the Court finds that the Amendment is constitutional, and that Plaintiff lacks standing to sue.

## I. Factual Background

Defendant produces and markets No-Slip Grip products under the Scunci brand name. Plaintiff alleges that he sells hair accessories and "is a competitor and licensor of products within the hair accessory marketplace." Plaintiff further alleges that "a diligent patent search has revealed that the Defendant's claim of having a patent or patent pending on its No-Slip Grip hair products is false . . . ."[4] Specifically, Plaintiff alleges that although Conair filed patent applications related to the relevant hair clips, Conair received at least four written notices from the United States Patent and Trademark Office ("PTO") that its patent applications had been abandoned. Conair did not file any additional patent applications relating to the products at issue after receiving the November 14, 2007 notice from the PTO. Plaintiff alleges that despite the lack of patents or pending patent applications, Defendant continued to mark the packages for its products with the words "U.S. and International Patents Pending and continued to advertise its No-Slip Grip products as patented on the Conair website.

Plaintiff filed a one-count Complaint, alleging that Conair's false and misleading markings violated § 292 and stifled competition, and that Plaintiff competes with Conair in the hair accessory market.

At the time Plaintiff's Complaint was filed, § 292 permitted *qui tam* actions, so that "any person" had standing to bring a civil suit for a false marking violation and share the statutory penalty with the government. On May 12, 2011, this Court found Plaintiff's allegations

---

[4] Compl. ¶ 14.

2

sufficient to state a *qui tam* claim under § 292. However, in September 2011, Congress passed the Amendment to § 292, which eliminated *qui tam* actions even for actions pending at the time of enactment.[5] Now, in order to have standing to bring a false marking claim under § 292, a plaintiff must allege that he "has suffered a competitive injury as a result of a violation . . . ."[6] In its motion for judgment on the pleadings, Defendant argues that Plaintiff has failed to allege a competitive injury sufficient to maintain standing under the Amendment. Plaintiff argues that he has alleged a competitive injury, and also that the Amendment's retroactive elimination of his pending *qui tam* claim is unconstitutional, as it violates the Fifth Amendment to the United States Constitution.

## II.  Standard of Review

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under substantially the same standard as a 12(b)(6) motion.[7] A defendant bears the burden of demonstrating that the Plaintiff has not stated a claim.[8] In evaluating a Rule 12(c) motion, a court may consider the complaint, the answer, and any written instruments attached to the pleadings.[9]

Dismissal for failure to state a claim is appropriate where a plaintiff's "plain statement"

---

[5] Pub. Law 112-29, §16(b) ("Section 292(a) of title 35, United States, Code, is amended by adding at the end of the following: 'Only the United States may sue for the penalty authorized by this subsection'. . . The amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act").

[6] 35 U.S.C. § 292(b).

[7] Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

[8] Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

[9] Churchill v. Star Enter., 3 F. Supp. 2d 625, 627 (E.D. Pa. 1998); Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004).

3

does not possess enough substance to show that plaintiff is entitled to relief.[10] Something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[11] Accordingly, the complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.[12] Courts are not bound to accept as true legal conclusions couched as factual allegations.[13]

## III. Discussion

### A. Retroactive Application of the Amendment and Due Process

When Plaintiff filed this action, § 292(b) empowered any person to bring a *qui tam* action for deceptive patent markings. The Amendment passed in September 2011 abolished the *qui tam* provision for both pending and future actions. Consequently, at this time, only the government and those individuals who have suffered competitive injuries can pursue false marking claims.

Plaintiff argues that, having filed this lawsuit, he had a property interest in the suit, and the Amendment's retroactive elimination of his standing to pursue this suit violates the Fifth Amendment, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law . . . ."[14] Several district courts around the country have

---

[10] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[11] Id. at 570.

[12] Id. at 562-63.

[13] Id. at 555.

[14] U.S. Const. Amend. V.

4

considered similar due process arguments, and all have rejected them.[15] The Third Circuit has expressly held that a pending tort claim does not constitute a vested right requiring heightened scrutiny.[16] Therefore, although any retroactive legislation has the potential to compromise established expectations and interests,[17] the "due process standard generally applicable to retroactive economic legislation is that the retroactive application of the statute [must be] supported by a legitimate legislative purpose furthered by rational means."[18] Because acts of Congress are presumptively constitutional, to establish a due process violation a challenger must show that the legislature has acted in an arbitrary and irrational way.[19] Plaintiff has failed to do so here.

From 1842, when § 292(b) created the *qui tam* action for false marking, until 2009, when the Federal Court of Appeals decided Forest Group, Inc. v. Bon Tool Co.,[20] courts have generally imposed the $500 statutory fine only to each *decision* to falsely mark a product or line of items.

---

[15] Seirus Innovative Accessories, Inc. v. Cabela's Inc., No. 09-102, 2011 WL 6400630 (S.D. Cal. Oct. 19, 2011); Brooks v. Dunlop Mfg. Inc., No. 10-4341, 2011 WL 6140912 (N.D. Ca. Dec. 9, 2011); Public Patents Foundations, Inc. v. McNeil-PPC, Inc., No. 09-5471, 2012 WL 527198 (S.D.N.Y. Feb. 16, 2012); Cloverleaf Golf Course, Inc. v. FMC Corp., No. 11-190, 2012 WL 948263 (S.D. Ill. Mar. 20, 2012).

[16] In re TMI, 89 F.3d 1106, 1113 (3d Cir. 1996) (legislation affecting a pending tort claim is not subject to heightened scrutiny due process review because a pending claim is not a vested property right).

[17] General Motors Corp. v. Romein, 503 U.S. 181, 191 (1992).

[18] Brooks, 2011 WL 6140912, at *4 (quoting United States v. Carlton, 512 U.S. 26, 30-31 (1994)); see also Landgraf v. USI Film Prods., 511 U.S. 244, 266-68 (1994) (holding that when Congress clearly intends for a statute to have retroactive effect, it will be applied unless a challenger can demonstrate a violation of the Due Process Clause); General Motors, 503 U.S. at 191(retroactive provision of the statute was a rational means to meet congressional objective).

[19] Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 729 (1984); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976); Hollander v. Ortho-McNeil-Janssen Pharm., Inc., No. 10-836, 2012 WL 85437, at *2 (E.D. Pa. Jan. 10, 2012).

[20] 590 F.3d 1295 (Fed. Cir. 2009).

5

Under this scheme, few citizens took advantage of the availability of the *qui tam* action, as the potential pay-off was so small (e.g. half of the $500 statutory fine). In Forest Group, the Federal Circuit held that the $500 fine could be imposed per article, on each and every item imprinted with the false marking. Subsequently, courts were flooded with *qui tam* false marking lawsuits, which could now provide a true windfall to *qui tam* plaintiffs who had suffered no personal or competitive injury.

It is evident from the Congressional Record that Congress amended § 292 in an effort to address the surge of false marking litigation that developed in the wake of Forest Group.[21] It intentionally and explicitly applied the Amendment to pending cases, leading inevitably to the dismissal of many of those lawsuits. The elimination of the flood of *qui tam* lawsuits, prospectively and retroactively, was consistent with Congress's overall purpose in passing the America Invents Act, which was "to promote industries to continue to develop new technologies that spur growth and create jobs across the country. . . "[22] In other words, Congress perceived that the drastic increase in *qui tam* false marking lawsuits was forcing companies to divert resources from innovation and product creation to time-consuming and expensive litigation. The America Invents Act, which preserves the right of the government and injured competitors to bring false marking claims, but eliminates the *qui tam* provision, is a rational response to that problem. Therefore, the Court finds that Congress passed with Amendment pursuant to a

---

[21] See H.R.Rep. No. 112-98(I) at 53 (2011); 157 Cong. Rec. S1360-02, S1372 (March 8, 2011) (statement of Sen. Kyl) ("Finally, because the Federal Circuit's recent decision in Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, Fed. Cir. 2009, appears to have created a surge in false-marking qui tam litigation, the changes made by paragraph (1) of section 2(k) of the bill are made fully retroactive by paragraph (2)"); see also 157 Cong. Rec. H4426, H4433 (June 22, 2011); 157 Cong. Rec. S5319 (Sept. 6, 2011).

[22] H.R. 1249: Leahy-Smith America Invents Act, 112th Cong. (2011).

6

legitimate legislative purpose, and that the retroactive application of the Amendment was rational in light of its purposes.[23]

Pending constitutional challenges to pre-Amendment § 292(b) also provide a rational basis for retroactive application of the Amendment.[24] It appears that at least some members of Congress were motivated by a desire to render moot these constitutional challenges to the *qui tam* provision.[25] By eliminating *qui tam* suits retroactively, Congress rendered moot any existing challenges to the constitutionality of the *qui tam* provision. Therefore, the Court holds that in eliminating the *qui tam* provision in § 292, and giving the change retroactive effect so as to moot pending constitutional challenges to that provision, Congress furthered a legitimate legislative purpose by rational means.

B. Retroactive Application of the Amendment and the Takings Clause

Plaintiff also argues that the retroactive elimination of his cause of action is an

---

[23] General Motors, 503 U.S. at 191 (finding that the purpose of the statute was to correct the unexpected results of a court's opinion, and holding that the retroactive provision of the statute was a rational means to meet that objective).

[24] Before Congress amended § 292, the Federal Circuit decided an appeal from a district court decision which had held that the *qui tam* provision of § 292 violated Article III of the United States Constitution. Stauffer v. Brooks Bros., Inc., 619 F.3d 1321 (Fed. Cir. 2010). The Federal Circuit held that the *qui tam* provision did not violate Article III. However, this ruling did not end the constitutional challenges to the *qui tam* provisions of the false marking statute; instead, defendants began challenging the *qui tam* provision pursuant to Article II, § 3 of the Constitution, arguing that the provision violated separation of powers by impermissibly undermining the executive branch's ability to "take Care that the Laws be faithfully executed."

In September 2011, two appeals from district court opinions holding that the *qui tam* provision in pre-Amendment § 292 violated Article II, § 3 of the United States Constitution were pending before the Federal Circuit. Rogers v. Tristar Prod., Inc., 793 F. Supp. 2d 711, 726 (E.D. Pa. 2011); Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc., 765 F. Supp. 2d 997, 1006 (N.D. Ohio 2011).

In addition, the Government's brief in support of its motion here notes that "the constitutional question was affecting district courts throughout the nation: in a June 28 letter to the Federal Circuit, concerning FLFMC v. Wham-O, No. 2011-1067, the United States informed the Court that there were over 900 false patent marking cases filed in district courts since April 2010, and that the United States has intervened in 128 cases to address these constitutional issues." Doc. No. 98 at 6-7.

[25] E.g., Senator Grassley raised this issue during senate hearings on the proposed Amendment. 157 Cong. Rec. S1360-02 (March 8, 2011).

unconstitutional taking of his property in violation of the Takings Clause of the Fifth Amendment. The Takings Clause prohibits the government from depriving individuals of *vested* property rights except for public use and with just compensation.[26] Plaintiff ignores judicial precedent holding that an individual's property right in a *qui tam* lawsuit does not vest until a final judgment is obtained.[27] At this point in the litigation, Plaintiff has alleged only an unvested property interest in the action before the Court. Furthermore, the economic impact of the Amendment on *qui tam* litigants is minimal, as they do not seek compensation for their own injuries or economic losses, but instead seek to share in the recovery for a wrong done to the government. The Amendment imposes no prospective financial burden on *qui tam* plaintiffs. Their economic loss is limited to the costs incurred during the litigation to date–litigation which was initiated voluntarily by plaintiffs who had suffered no competitive injuries,[28] with no guarantee of recovery. Therefore, the retroactive elimination of Plaintiff's *qui tam* claim is not a "taking" which requires compensation.

Furthermore, even if Plaintiff's interests were vested, "[b]ecause a taking is not unconstitutional unless it is uncompensated,"[29] his proper remedy would be to seek just

---

[26] Landgraf, 511 U.S. at 266.

[27] New York Central R.R. Co. v. White, 243 U.S. 188, 198 (1917); In re TMI, 89 F.3d at 1113; Ileto v. Glock, Inc., 565 F.3d. 1126, 1141 (9th Cir. 2009); Tonya K v. Bd. of Educ. of the City of Chicago, 847 F.2d 1243, 1247 (7th Cir. 1988) (holding that no civil litigant has an absolute entitlement to the benefit of legal principles which governed at the onset of the litigation); Hammond v. U.S., 786 F.2d 8, 12 (1st Cir. 1986) (no person has a vested interest in any rule of law until final, unreviewable judgment has been obtained).

[28] Although Plaintiff argues in the alternative that he has suffered a competitive injury, § 292 preserves the right of those who have suffered competitive injuries to bring false marking suits, and Plaintiff's constitutional challenges are applicable only to the retroactive elimination of the *qui tam* provision.

[29] Brooks, 2011 WL 6140912, at * 5.

compensation, not to have the statute struck down as unconstitutional. The Tucker Act[30] and the Little Tucker Act[31] permit individuals like Plaintiff to sue the government for compensation in the Court of Federal Claims, and takings claims "are premature until the property owner has availed itself of the process provided by the Tucker Act."[32]

C. <u>Standing under the Amendment</u>

Plaintiff's *qui tam* claim must be dismissed. However, his Complaint may survive if he has properly pled standing pursuant to amended § 292(b), which provides that "[a] person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." Defendant moves for judgment on the pleadings, arguing that Plaintiff has failed to allege the required competitive injury.

Plaintiff alleges that he "sells hair accessories in the Eastern District of Pennsylvania and elsewhere and is a competitor and licensor of products within the hair accessory marketplace."[33] He further alleges: "In marking its unpatented products with words or phrases claiming that its hair accessories are subject to pending patent or are patented, Conair has stifled competition, has acted for the purpose of deceiving the public and the citizens of the United States, and has made it more difficult for competitors (including Plaintiff) to obtain retail shelf space and sales for

---

[30] 28 U.S.C. § 1491(a)(1).

[31] 28 U.S.C. § 1346(a)(2).

[32] <u>Preseault v. I.C.C.</u>, 494 U.S. 1, 11 (1990) (internal citations omitted).

[33] Compl. at ¶ 3.

9

their competing products."[34] Finally, he alleges: "as a direct and proximate result of Conair's conduct, Plaintiff Mr. Rogers has suffered economic damages in the form of lost sales and competitive disadvantage."[35] These are the only allegations of the Complaint which support Plaintiff's claim that he has suffered a competitive injury.

To establish standing under the Amendment, Plaintiff must allege a tangible economic loss caused by the illegal competitive means (i.e., the false patent marking).[36] The Court agrees with Defendant that the Complaint "fails to allege any actual competitive injury to Rogers resulting from Conair's marking practices that goes beyond mere speculation and conclusory statements."[37] While Plaintiff sets forth the legal conclusion that Conair's false marking practices led to limited shelf space for his products and loss of sales, he alleges no facts from which the Court can find a plausible causal connection between any difficulty Plaintiff experienced in obtaining retail shelf space or selling his product and Conair's marking practices.[38] Accordingly, the Court finds that Plaintiff has failed to allege a competitive injury sufficient to establish standing to sue under the Amendment.

---

[34] Compl. at ¶ 16.

[35] Compl. at ¶ 17.

[36] While the Third Circuit has not yet defined "competitive injury" in the patent marking context, this Court agrees with other district courts which have so interpreted the term. See Advanced Cartridge Tech., LLC v. Lexmark Int'l, Inc., 10-486, 2011 WL 6719725, at *2, 4 (M.D. Fl. Dec. 21, 2011), Fisher-Price, Inc. v. Kids II, Inc., 10-988, 2011 WL 6409665, at *9 (W.D.N.Y. Dec. 21, 2011).

[37] Doc. No. 84 at 7.

[38] See Fisher-Price, Inc., 2011 WL 6409665, at *9-10 (finding competitor did not adequately allege that false markings had deterred or discouraged it from manufacturing or marketing competing products in the relevant market).

10

## IV.  Conclusion

For the foregoing reasons, Plaintiff's constitutional challenge is denied, and Defendant's Motion for Judgment on the Pleadings is granted. However, as Plaintiff does allege that he is a competitor of Conair, the Court will grant Plaintiff leave to amend the Complaint to plead a competitive injury.

An appropriate Order follows.

ENTERED
APR 25 2012
CLERK OF COURT

11